Appellant, Martin Marietta Materials, Inc., appeals from a judgment of the Franklin County Court of Common Pleas affirming a decision of the Ohio Reclamation Commission, itself reversing a decision of the Ohio Department of Natural Resources, Division of Mines and Reclamation ("the Division") granting appellant's surface mining permit application.
The present case arises out of appellant's mining permit application to develop and operate a stone quarry on two hundred eighty-two acres located in Wilson Township, Clinton County, Ohio. The principal issue in the case is the effect upon appellant's mining permit application of a comprehensive land use plan adopted by the Clinton County Board of Commissioners. Clinton County is the object of a comprehensive plan authored by the Clinton County Regional Planning Commission pursuant to R.C. 713.23. The comprehensive plan designates certain areas of Clinton County as "agricultural protection areas." The stated land use objective for the agricultural protection areas is to encourage and strengthen the agriculture industry and associated infrastructure, preserve agricultural lands and forest lands, and maintain the quality and long term productive capacity of the local soil and water resources. Most of Wilson Township, including the proposed surface mine location, is designated under the plan as such an agricultural protection area.
Issuance of surface mining permits in Ohio is governed by R.C. 1514.02. Specifically, R.C. 1514.02(A) states that " * * * no operator shall engage in surface mining or conduct a surface mining operation without a permit issued by the chief [of the division]. R.C. 1514.02(B) provides that "[t]he chief shall issue an order denying an application for an operating permit * * * if the chief determines that the measures set forth in the [mining and reclamation] plan are likely to be inadequate to prevent damage to adjoining property or to achieve one or more of the performance standards required in division (A)(9) of this section." R.C. 1514.02(A)(9) sets forth the following performance standards:
 A complete plan for mining and reclamation of the area to be affected, which shall include a statement of the intended future uses of the area and show the approximate sequence in which mining and reclamation measures are to occur, the approximate intervals following mining during which the reclamation of all various parts of the area affected will be completed, and the measures the operator will perform to prevent damage to adjoining property and to achieve all of the following general performance standards for mining and reclamation[.]
* * * *
 (b) Where a plan of zoning or other comprehensive plan has been adopted that governs land uses or the construction of public improvements and utilities for an area that includes the area sought to be mined, ensure that future land uses within the site will not conflict with the plan[.]
An appeal from a grant or denial of a surface mining permit under R.C. 1514.02 shall be taken to the Reclamation Commission under R.C. 1513.13(A)(1):
 Any person having an interest that is or may be adversely affected by a notice of violation, order, or decision of the chief of the division of mines and reclamation * * * may appeal by filing a notice of appeal with the reclamation commission for review of the notice, order, or decision * * * the commission has exclusive original jurisdiction to hear and decide such appeals.
Martin Marietta first submitted its mining permit application to the Division on December 17, 1996. This initial application did not acknowledge the existence of the local comprehensive land use plan. The permit application described the post-mining land use as a private lake to be used for water retention, wildlife habitat, and water oriented residential development. Later revisions to the permit application did acknowledge the existence of the comprehensive plan, albeit only seven days before the Division issued a permit on June 6, 1997, approving Martin Marietta's proposed surface mining operation and reclamation plan.
In issuing the permit, the chief of the division determined that it was her statutory responsibility to determine whether or not a conflict existed between the proposed future uses of the mine site, and the county's comprehensive plan. The chief further determined, however, that application of R.C.1514.02(A)(9)(b) involved only an assessment of the proposed post-mining land use compared to aspects of the comprehensive plan governing the construction of public utilities and improvements. On this limited basis of comparison, the chief of the division found that no conflict existed, and issued the permit.
The permit issuance gave rise to three separate appeals to the Ohio Reclamation Commission by the present appellees, who include the Clinton County Board of Commissioners, the Clinton County Regional Planning Commission, and a coalition of neighboring farmers and residents, all of whom asserted that a conflict existed between the comprehensive land use plan and Martin Marietta's proposed future use for the property.[1]
After extensive hearing and argument on all aspects of the matter, the Reclamation Commission issued its decision on December 18, 1997, in which it reversed the order of the chief which had granted the mine permit application. As a predicate to its analysis, the commission initially sought to define the term "future land use" under R.C. 1514.02(A)(9)(b). Both the Division and Martin Marietta asserted that this referred to post-mining
land use, while opponents to the mine asserted that "future land use" should include both mining and post-mining uses. Based upon the plain meaning of the statutory language, the commission determined that "future land use" would refer to post-mining uses only. The commission also addressed the underlying question of whether, and to what extent, a comprehensive land use plan governs actual land use, since it is a regional land use guidance tool and not legally enforceable, in contrast to zoning. The commission noted, that, whatever the weight given to a comprehensive plan for other purposes, R.C. 1514.02(A)(9)(b) showed a legislative intent to require that land use be consulted in connection with the surface mining permit process.
Reaching the core issue before it, the commission ultimately concluded that R.C. 1514.02(A)(9)(b) places the burden on the mining permit applicant to assure the division chief that the future intended uses for the proposed mine site do not conflict with the local land use goals. Since the Division was on notice that local opposition existed to the proposed mine site based upon conflicts with the comprehensive plan, it was the responsibility of the chief to obtain assurance from Martin Marietta, as the permit applicant, regarding assurances that no conflict existed. The commission decision states, "where a lawfully adopted comprehensive plan exists, O.R.C. 1514.02(A)(9)(b) requires the division chief to defer to the local authorities regarding land use conflicts. Indeed, the Division has a long standing policy that land use questions should be resolved between an applicant operator and the local land use authorities before
a permit can be issued." (Commission decision p. 9, emphasissic.)
The matter was accordingly referred to the chief of the Division for a determination of whether the local land use authorities believed a conflict existed between the Clinton County Comprehensive Plan and the proposed future use of the mining area. Compliance with R.C. 1514.02(A)(9), and consequently the issuance of a permit, would hinge upon this determination by local authorities.
Martin Marietta appealed the Reclamation Commission's decision to the Franklin County Court of Common Pleas pursuant to R.C. 1513.14. The common pleas court noted that the Supreme Court has stated that "[t]he purpose of R.C. Chapter 1514 is to ameliorate the effects of surface mining on the natural beauty and environment of Ohio, to the ultimate benefit of public health and safety." Set Products, Inc. v. Bainbridge Twp. Bd. of ZoningAppeals (1987), 31 Ohio St.3d 260, 265. The Supreme Court in SetProducts drew a parallel between these objectives of the mine permit issuance statutes and those of general property zoning law, concluding that the law contemplated a dual jurisdiction to regulate surface mining, including both local zoning ordinances and the state authorities. The court of common pleas extended the reasoning of Set Products, drawing a similar parallel between the objectives of the mining permit process and the general objectives of a comprehensive plan adopted pursuant to R.C. 713.23.
The court of common pleas affirmed the Reclamation Commission's determination that the chief's statutory obligation, when assessing a permit application, was to establish the existence or nonexistence of a conflict between the planned post-mining use, and the land use plan adopted by a local planning commission under R.C. 713.23. The court adopted the Reclamation Commission's determination that the chief must consider the position of local land use authorities on the issue when determining the existence of such a conflict. The court also adopted the commission's definition of the term "future use" under R.C. 1514.02(A)(9)(a) and (b). Based upon this reading of the relevant statutory authorities, the court of common pleas thus concluded that the decision of the Reclamation Commission was neither arbitrary, capricious, nor otherwise inconsistent with law, and accordingly affirmed.
Martin Marietta has timely appealed and brings the following assignments of error:
 1. Where Ohio Rev. Code § 1514.02(B) expressly vests the Chief with the sole jurisdiction to "determine" whether a land use conflict exists under § 1514.02(A)(9)(b), the court erred by upholding the Reclamation Commission's ruling that any undefined local governmental authority can automatically divest the Chief of that statutory jurisdiction, merely by raising an objection to the future land use, regardless of the merit of that objection.
 2. The court ignored the plain language of § 1514.02(A)(9)(b), of § 713.25, and pertinent Ohio case law, in holding that the proposed future use must be in congruence with all aspects of a comprehensive plan as opposed to only the plan's specific provisions dealing with the construction of public improvements and utilities.
 3. Since the statutory framework of § 1513.13 is clearly intended to require that Chief Morris's decision must be given deference and be upheld unless it is arbitrary, capricious or inconsistent with law, and since the overwhelming evidence, including the testimony of the drafter of the Clinton County Plan, established that no conflict exists between the proposed post-mining land use and the Clinton County Plan, it was error for the court to uphold the reversal of Chief Morris's decision.
 4. The common pleas court erred by completely failing to address Martin Marietta's assignment of error that the Reclamation Commission's establishment of a new procedure for surface mining applications is improper adjudicatory rule-making by an administrative reviewing body.
Pursuant to R.C. 1514.09 and 1513.14, the standard of review of the court of common pleas in this case is that "[t]he court shall affirm the decision of the commission unless the court determines that it is arbitrary, capricious, or otherwise inconsistent with law." R.C. 1513.14(A)(3). The appellate standard of review upon appeal from a court of common pleas decision addressing a Reclamation Commission case has never been clearly enunciated in our appellate courts, but we will postulate, consistent with other administrative appeals brought pursuant to R.C. Chapter 119, that our review is limited to a finding of whether the court of common pleas abused its discretion in applying the above standard.
Initially, we note the distinction between a comprehensive plan drafted by a planning commission pursuant to R.C. 713.23, which is largely aspirational, and a duly enacted comprehensive plan of zoning governing actual land use. While, as discussed by the court of common pleas, the interaction between state statutes governing the mine permitting process and locally enacted zoning ordinances has been previously addressed by the Supreme Court of Ohio inSet Products, supra, the interaction between mine permitting statutes and an R.C. 713.23 comprehensive plan is a question of first impression in the courts of this state.
For ease of development of the present discussion, we will first address appellant's second assignment of error, which asserts that the commission and court of common pleas erred in concluding that a mining permit applicant's proposed future use must be in compliance with all aspects of a comprehensive plan, as opposed to only the plan's specific provisions addressing public improvements and utilities. This was the conclusion of the chief, who had found that, on this limited basis, no conflict between the comprehensive plan and Martin Marietta's proposed post-mining use could be found, since the post-mining involved no public improvements or utilities. We agree with the reclamation commission that the more limited interpretation adopted by the division does not comport with the plain language of the statute:
 Where a plan of zoning or other comprehensive plan has been adopted that governs land uses or the construction of public improvements and utilities for an area that includes the area sought to be mined, insure that future land uses within the site will not conflict with the plan[.]
R.C. 1514.02(A)(9)(b) (emphasis added). The existence of a conflict is thus not limited to one between the post-mining use and public improvements and utilities, but between any aspect of a comprehensive plan governing any land uses. While Martin Marietta has extensively briefed the indisputable difference between an R.C. 713.23 comprehensive plan, and a zoning plan's enforceable restriction on land use, we can only note that this is not a general land use case, but a mine permitting case subject to distinct statutory regulation. R.C. 1514.02(A)(9)(b) speaks only of a plan that governs land use or the construction of public land use and utilities, and makes no distinction between zoning plans and an R.C. 713.23 comprehensive plan for purposes of establishing a conflict with proposed post-mining uses. We therefore agree with the Reclamation Commission that the chief improperly restricted the inquiry to a conflict between such public improvements and utilities under the comprehensive plan, and the proposed mining use. Martin Marietta's second assignment of error is accordingly overruled.
Having settled the issue of the scope of a comprehensive plan, we may now proceed to address Martin Marietta's first assignment of error, which presents the core issue of the case and is dispositive of this appeal. The issue raised under this assignment of error addresses the relative roles of the chief, commission, and local land use authorities in assessing the existence of a conflict under R.C. 1514.02(A)(9)(b).
Martin Marietta's position is that, pursuant to R.C.1514.02(B), the chief of the Division has the authority and obligation to determine whether a conflict exists based upon her independent review of local land use plans and the competing positions of the mining permit applicant and local land use authorities. Appellees assert, to the contrary, that the chief's authority is limited to ascertaining whether the applicant has "insured" that a conflict does not exist between the comprehensive plan and post-mining future land use. In appellees' view such an assurance can only be given by the permit applicant if the applicant submits documentation that any objections from local authorities have been resolved through compromise or concession in the mining plan. This is essentially the position adopted by the Reclamation Commission and the court of common pleas, but unfortunately a view which we cannot adopt in light of the plain language of the statute: "The chief shall issue an order denying an application for an operating permit or an amendment if the chief determines that the measures set forth in the plan are likely to be inadequate to prevent damage to adjoining property or to achieve one or more of the performance standards required in division (A)(9) of this section." R.C. 1514.02(B) (emphasis added). From the record, it is clear that the long-standing procedure of the division, and the preferred methodology of the Reclamation Commission in resolving permit application conflicts, is to refer the matter back to the applicant and local authorities until an accommodation is reached and the permit application can proceed without objection. While this is a commendable consensus-building procedure, it does not allow for circumstances in which no compromise can be reached between the permit applicant and local authorities. Clearly, the plain language of the statute quoted above requires the chief to make a determination. While it is of course preferable to have all parties in agreement prior to issuance of the permit, there will be situations where intractable attitudes on the part of one or both sides to the dispute will require the chief to cut the Gordian knot. The matter before us presents in fact such a case. However, the decision of the court of common pleas and the Reclamation Commission has invested local authorities, and even local residents, with what amounts to a veto power over the issuance of any permit, based upon their interpretation, be it reasonable or not, of the comprehensive plan.
On the other hand, we likewise reject Martin Marietta's underlying position that the comprehensive plan, being merely aspirational, cannot be taken to have the same prohibitive effect on mining as would a plan of zoning as discussed in Set Products. There must be, however, some real conflict between the provisions of the comprehensive plan, however aspirational, and the projected post-mining future use of the property. Ultimately, the determination of such conflict rests with the chief, with the concomitant right of appeal from such a determination available to the Reclamation Commission.
It is apparent in the present case that the chief believed herself vested with the power to make such determination, but made it upon the incorrect assumption that the only conflict which could be addressed would be between the comprehensive plan's provisions addressing public improvements and utilities. As discussed in connection with appellant's second assignment of error above, this interpretation is overly restrictive.
From a procedural standpoint, we are unable to fully agree with any of the parties in the present matter. We decline to adopt the Reclamation Commission's position that any objections raised by local authorities would obviate the statutory authority of the chief of the Division to make appropriate determinations regarding land use conflicts in issuing a permit. We also decline to adopt the overly narrow position in determining such a conflict made by the chief. We therefore affirm the Franklin County Court of Common Pleas decision affirming that of the Reclamation Commission reversing the issuance of a permit to appellant Martin Marietta. However, a different basis is relied upon in reaching our conclusion since the permit approval which was in fact improperly granted in the present case requires a remand to the chief of the Division for a determination of whether there exists a conflict between the entirety of the comprehensive plan and the permit applicant's proposed post-mining future use.
Our conclusions with respect to appellant's first and second assignments of error render moot appellant's third and fourth assignments of error. In summary, appellant's first assignment of error is sustained in part and overruled in part, appellant's second assignment of error is overruled, and appellant's third and fourth assignments of error are rendered moot and the matter is remanded to the trial court for further proceedings in accordance with this opinion including ultimate remand of the case to the Chief of the Division of Mines and Reclamation.
Judgment affirmed in part, reversed in part and cause remanded.
TYACK and BRYANT, JJ., concur.
[1] In the interval between the issuance of the permit by the Division to Martin Marietta, and the issuance of a temporary relief order by the Reclamation Commission, the appellees obtained a temporary restraining order from the Clinton County Court of Common Pleas which blocked the commencement of mining operations. This TRO was contested by Martin Marietta in an original action seeking a writ of prohibition on jurisdictional grounds from the Ohio Supreme Court, subsequently removed to the United States District Court for the Southern District of Ohio, which extended the TRO until temporary relief could be considered by the Reclamation Commission.